UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

JOHN RIGBY,                          )
                                     )
              Plaintiff,             )     Case  No. EDCV 09-00846 AJW
                                     )
       v.                            )     MEMORANDUM OF DECISION
                                     )
MICHAEL J. ASTRUE,                   )
Commissioner of the Social           )
Security Administration,             )
                                     )
              Defendant.             )
_____)

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits.  The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The parties are familiar with the procedural facts, which are summarized in the Joint Stipulation. [See JS 2]. In a written hearing decision that constitutes the Commissioner's final decision in this matter, an Administrative Law Judge ("ALJ") found that through December 31, 2007, plaintiff's date last insured, plaintiff had no severe physical impairments, and a severe mental impairment in the form of an affective mood disorder. [Administrative Record ("AR") 8-17; JS 2].  The ALJ further found that plaintiff retained the residual functional capacity ("RFC") through his date last insured to perform work at all exertional

1   levels involving no more than simple, repetitive tasks with no public interaction. [AR 12].   The ALJ

2   concluded that plaintiff's RFC precluded performance of his past relevant work, but that plaintiff could

3   perform alternative jobs available in significant numbers in the national economy, such as the jobs of

4   production assembly worker and small products assembler.  [JS 2; AR16-17].

5                                          **Standard of Review**

6          The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial

7   evidence or is based on legal error. <u>Stout v. Comm'r Social Sec. Admin.</u>, 454 F.3d 1050, 1054 (9th Cir.

8   2006); <u>Thomas v. Barnhart</u>, 278 F.3d 947, 954 (9th Cir. 2002).  "Substantial evidence" means "more than

9   a mere scintilla, but less than a preponderance." <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1214 n.1 (9th Cir.

10  2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

11  <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is

12  required to review the record as a whole and to consider evidence detracting from the decision as well as

13  evidence supporting the decision.  <u>Robbins v. Soc. Sec. Admin</u>, 466 F.3d 880, 882 (9th Cir. 2006);

14  <u>Verduzco v. Apfel</u>, 188 F.3d 1087, 1089 (9th Cir. 1999).  "Where the evidence is susceptible to more than

15  one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

16  <u>Thomas</u>, 278 F.3d at 954 (citing <u>Morgan v. Comm'r of Soc. Sec. Admin.</u>, 169 F.3d 595, 599 (9th Cir.1999)).

17                                            **Discussion**

18       **Medical opinion evidence**

19          Plaintiff contends that the ALJ failed properly to evaluate the opinion of Dr. Divy Kikani, a

20  consultative physician, and therefore that the ALJ's RFC finding is defective. [<u>See</u> JS 5-12].

21          Dr. Kikani, a board-eligible psychiatrist, evaluated plaintiff in July 2006.   Plaintiff was 57 years

22  old at the time of the examination. Dr. Kikani elicited a history, reviewed medical records, and conducted

23  a mental status examination. [AR 160-163].

24          Plaintiff told Dr. Kikani that he was in chronic pain due to prostate cancer, which plaintiff believed

25  had spread to his back.[1] Dr. Kikani noted that plaintiff reported having symptoms of depression and anxiety

26

27          [1]   Plaintiff was diagnosed with prostate cancer in 2001. [<u>See</u> AR 12-13]. Rather than
28  undergoing treatment at that time, plaintiff elected "watchful waiting, with no cancer progression"
    for several years. [AR 652]. The risks of metastatic spread of the disease were discussed with

for the past 5 to 7 years. Plaintiff said that he was not taking medication or undergoing treatment. His primary care physician at the Veterans' Administration ("VA") Hospital had prescribed Paxil and Elavil in the past, but plaintiff said he was not taking those medications. Dr. Kikani commented that plaintiff indicated that he stopped taking those medications because they "knocked him out." [AR 160].

On mental status examination, plaintiff's grooming, appearance, and behavior were unremarkable. Plaintiff's speech was normal. His thought processes were clear, coherent, and goal-directed. His thought content reflected a preoccupation with despair, chronic pain, inability to work in his former capacity, and inability to attend to his activities of daily living due to prostate cancer. Plaintiff reported "having flashbacks of the Vietnam War," but "on specific questioning," plaintiff denied symptoms of thought disorder, perceptual disturbances, prominent delusions, prominent manic symptoms, and any active suicidal or homicidal ideation. [AR 162]. Plaintiff was oriented in all spheres. His recent and remote memory was intact. His general fund of knowledge, abstracting ability, and judgment were fair. Plaintiff's insight into his current psychiatric problems was impaired. [AR 162].

Dr. Kikani's impression was mood disorder, currently depressed type, secondary to medical condition, and rule out mood disorder, not otherwise specified. Dr. Kikani assigned plaintiff a Global Assessment of Function ("GAF") score of 55.[2] [AR 162]. In a narrative assessment, Dr. Kikani said that

---

plaintiff in February 2006. Shortly thereafter, plaintiff underwent diagnostic imaging, which was negative for metastatic disease. [See AR 13]. In January 2008, plaintiff began a course of radiation and hormone treatment. He tolerated the treatment well and was noted to be "stable, doing well" at a follow-up examination in April 2008. [See JS 5-6; AR 11-13, 649-656]. The ALJ found that plaintiff's prostate cancer treatment had been "effective," and that "there is no indication of cancer at this time." [AR 11]. Plaintiff does not challenge the ALJ's finding that his history of prostate cancer and cancer treatment did not amount to a severe physical impairment for any continuous twelve-month period. [See AR 11].

[2]    The GAF score is a "multiaxial" assessment that reflects a clinician's subjective judgment of a patient's overall level of functioning by asking the clinician to rate two components: the severity of a patient's psychological *symptoms,* or the patient's psychological, social, and occupational *functioning*. The GAF score is the lower of the symptom severity score or the functioning severity score. A GAF score of 51-60 signifies moderate symptoms, such as flat affect or occasional panic attacks, or moderate difficulty in social, occupational, or school functioning, such as having few friends or conflicts with peers or co-workers. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM-IV") Multiaxial Assessment, 27-36 (rev. 2000)) .

1   plaintiff's symptoms "are primarily and secondarily due to" his medical condition and chronic pain

2   complaints. [AR 162-163]. Dr. Kikani concluded that plaintiff had "mild to moderate impairment" in social

3   functioning; activities of daily living; and concentration, persistence, and pace. Dr. Kikani added that

4   plaintiff "*may have* mild to moderate" difficulty remembering, understanding, and carrying out complex

5   instructions; persisting at normal work situations under customary work pressure; coping with changes in

6   routine work settings; and  responding appropriately to usual work situations, attendance, and safety. [AR

7   163]. Plaintiff "does show mild to moderate difficulty" responding appropriately to co-workers,

8   supervisors, and the public. [AR 163]. He "may be expected to show mild to moderate episodes of

9   emotional deterioration" in normal work situations under customary work pressure. [AR 163]. Plaintiff had

10  no impairment in remembering, understanding, and carrying out simple instructions. [AR 163]. Overall,

11  Dr. Kikani found that plaintiff was "mildly to moderately psychiatrically disabled from the underlying

12  psychiatric condition," which in Dr. Kikani's opinion was "in reaction to, or secondary to, [the] underlying

13  medical condition." [AR 163]. Plaintiff's prognosis was "fair under structured outpatient psychiatric

14  treatment, both with medications and psychotherapy." [AR 163].

15          In general, "[t]he opinions of treating doctors should be given more weight than the opinions of

16  doctors who do not treat the claimant." Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007)(citing Reddick v.

17  Chater, 157 F.3d 715, 725 (9th Cir. 1998)); see 20 C.F.R. §§ 404.1502, 404.1527(d)(2), 416.902,

18  416.927(d)(2). An examining physician's opinion, in turn, generally is afforded more weight than a non-

19  examining physician's opinion. Orn, 495 F.3d at 631; Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir.

20  1995). If contradicted by the opinion of another doctor, a treating or examining physician's opinion can be

21  rejected only for specific and legitimate reasons that are based on substantial evidence in the record.  Batson

22  v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan v. Halter, 242 F.3d 1144,

23  1148-1149 (9th Cir. 2001); Lester, 81 F.3d at 830-831. "The opinion of a nonexamining physician cannot

24  by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining

25  physician or a treating physician."  Lester, 81 F.3d at 831.

26          The ALJ accurately summarized Dr. Kikani's report. [AR 13-14]. The ALJ found that plaintiff had

27  an affective mood disorder that limited him to simple, repetitive tasks  with no public interaction. [AR 12-

28  15]. Plaintiff argues that the ALJ was required to articulate clear and convincing reasons for rejecting Dr.

Kikani's opinion.  Plaintiff further contends that the ALJ erred in not "distinguishing or somehow validly discrediting" Dr. Kikanis's GAF score of 55, and wrongly diminished its significance by saying that a GAF score of 55 "suggests *only* moderate symptoms or difficulty." [JS 7 (quoting AR 14)(italics added)].

The ALJ articulated clear, convincing reasons for his evaluation of Dr. Kikani's opinion.  He agreed with Dr. Kikani's diagnosis of a mood disorder.  Dr. Kikani concluded that plaintiff's mood disorder would not prevent him from understanding, remembering, and performing simple instructions.  The ALJ's finding that plaintiff can perform simple, repetitive tasks is consistent with that aspect of Dr. Kikani's opinion.  Dr. Kikani also said that plaintiff "does show mild to moderate difficulty" responding to supervisors, coworkers, and the public.  The ALJ rationally precluded plaintiff from jobs requiring public contact.  The ALJ did not explain why he did not similarly restrict plaintiff's interaction with supervisors and coworkers.  However, it may be inferred that jobs involving simple, repetitive tasks do not require much interaction with other employees.  That  inference is supported by job information in the Dictionary of Occupational Titles ("DOT") for the representative unskilled jobs identified by the vocational expert. [See AR 16, 36]. The DOT states that the job of small products assembler ( DOT job number 706.684-022) and production assembly worker (DOT job number 706.687-010) requires the functions of "taking instructions" and "helping" people, but that those functions are "not significant" in either of those two jobs.  See generally DOT, Parts of the Occupational Definition, 1991 WL 645965 (4th ed. rev. 1991).

Dr. Kikani said that plaintiff "may have" the remaining "mild to moderate" functional limitations described in his report.  In other words, Dr. Kikani was equivocal as to whether plaintiff actually had those remaining limitations, even in mild form. Based on the record as a whole, the ALJ justifiably concluded that the remaining limitations described by Dr. Kikani did not limit plaintiff's RFC.  Dr. Kikani described plaintiff's depressive symptoms as "primarily and secondarily due to his medical condition of suffering from prostate cancer which he thinks has spread to his back." [AR 162].  The ALJ noted that plaintiff's fear that his prostate cancer had spread and his complaints of chronic pain from prostate cancer were not significant enough to motivate him to undergo treatment for several years following his initial cancer diagnosis, after his examination by Dr. Kikani. [AR 11-15].  Cf.  Burch, 400 F.3d at 681 (holding that the ALJ did not err in discrediting the claimant's pain testimony where she did not seek treatment for a period of four months, and observing that where the claimant's pain was "not severe enough to motivate her to seek consistent

treatment, that "is powerful evidence regarding the extent to which she was in pain"). When plaintiff agreed to undergo diagnostic imaging in 2006, those tests showed no evidence of metastatis. Plaintiff subsequently underwent successful prostate cancer treatment, which he tolerated well, with side effects he described as not bothersome. [AR 11-14, 649-655]. Thus, the medical factors that plaintiff described as triggers of his depressive symptoms were not very credible, or at most were transient problems that had resolved by the time the ALJ issued his opinion.

The ALJ permissibly concluded that some of the subjective symptoms of depression that plaintiff described to Dr. Kikani were not fully credible. For one thing, plaintiff had discontinued taking medication his primary care physician had briefly prescribed for depression and never sought any other form of psychiatric treatment. In addition, plaintiff told Dr. Kikani he had flashbacks of his military service in Vietnam, but he did not report those flashbacks to his VA doctors. [See AR 15].

Plaintiff's argument that the ALJ impermissibly rejected Dr. Kikani's GAF score lacks merit. The GAF score is not an RFC assessment because it takes into account factors other than the patient's psychiatric condition, such as occupational and social stressors. See Vargas v. Lambert, 159 F.3d 1161, 1164 (9th Cir. 1998)(describing a GAF score as "a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment"). For that reason, the "moderate" level of symptom severity or "moderate difficulty in social, occupational, or school functioning" reflected in Dr. Kikani's GAF score of 55 is less probative than the function-by-function mental capacity assessment that Dr. Kikani provided in his psychiatric examination report. The ALJ properly evaluated Dr. Kikani's mental functional capacity assessment. Therefore, he did not err in failing to separately analyze or discuss plaintiff's GAF score. Cf. Howard v. Comm'r of Social Sec., 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy. Thus, the ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate.").

The ALJ provided clear and convincing reasons for his interpretation of Dr. Kikani's opinion. The ALJ's RFC assessment is supported by substantial evidence in the record and reflects application of the correct legal standards.

///

**Conclusion**

For the reasons stated above, the Commissioner's decision is supported by substantial evidence and is free of legal error.  Accordingly, the Commissioner's decision is **affirmed.**

**IT IS SO ORDERED.**

January 21, 2010

_____
ANDREW J. WISTRICH
United States Magistrate Judge